David E. LARSON, d/b/a David Larson Productions,
n/k/a David Larson Productions, Inc., Plaintiff-
Respondent,

v.

LABOR & INDUSTRY REVIEW COMMISSION, Defendant-
Appellant,†

DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS,
Unemployment Compensation, Ivy Lynn Revolinski,
Andrew G. Stieber, Donald J. Lee, Jeffrey Cartier,
Mary Reidinger, John Kraft and Tom Reardon,
Defendants.

Court of Appeals

*No. 93–2461. Submitted on briefs March 8, 1994.—Decided
April 27, 1994.*

(Also reported in 516 N.W.2d 456.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *David P. Jenkins* of Labor and Industry Review Commission and Department of Industry, Labor and Human Relations.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Charles B. Palmer* of *Krukowski & Costello, S.C.* of Milwaukee.

Before Anderson, P.J., Brown and Snyder, JJ.

BROWN, J.   The issue is whether seven individuals working as members of a film production and editing crew were David E. Larson's employees under

§ 108.02(12), STATS., which defines "employe" for unemployment tax purposes. We hold that Larson met his burden under § 108.02(12)(b) of showing: (1) that the seven individuals were free from his control or direction and (2) that such services were performed by the individuals in their independently established businesses in which they were customarily engaged. Therefore, we affirm the circuit court determination that the seven individuals were not employees for unemployment tax purposes.

This litigation began when Larson appealed the Department of Industry Labor and Human Relations' initial determination that seven individuals were his employees. The following undisputed facts were adduced in proceedings before an administrative law judge.

Larson is in the business of producing taped television programming for his clients. He chooses the production crew, consisting of a director, a camera operator, a lighting person, an engineer and an editor. His role during film shoots is executive producer; he gives instructions to crew members through the director, and the director controls the actions of the camera operator, the lighting person and the engineer. Larson's presence during film shoots allows him to assure that his client's message is conveyed in the end product. Disputes between Larson and the director regarding the means to achieve the desired result are resolved through discussion and compromise.

The filming and the editing take place in studio space leased by Larson. He provides the production equipment, which is worth "hundreds of thousands of dollars." However, the lighting person and the engineer may bring some of their own tools.

Larson engages editing services at an hourly rate because the nature of the work makes it difficult to predict the amount of editing time required for the particular job. Although Larson has the right to be present during editing, instead he relies on his own experience to monitor whether editing costs are justified. The remaining crew members are paid on a half-day or full-day basis. The full-day rate is based on a ten-hour day; if crew members work more than ten hours, they choose whether or not to bill Larson for the additional time.

The administrative law judge affirmed DILHR's initial determination, except it found that an individual doing equipment repair work was not an employee when acting in that capacity. The Labor and Industry Review Commission affirmed the administrative law judge with modifications in the reasoning and some factual findings. Larson sought judicial review; the circuit court subsequently reversed LIRC's decision.

█

We initially discuss the applicable statutory provisions under Wisconsin's Unemployment Act. Section 108.02(12)(a), STATS., defines "employe" as "any individual who is or has been performing services for an employing unit." However, employee status under this section does not apply to an individual performing services for an employing unit that satisfies a two-part test under § 108.02(12)(b). *See Keeler v. LIRC*, 154 Wis. 2d 626, 631, 453 N.W.2d 902, 904 (Ct. App. 1990). The burden of proof is on the alleged employer to demonstrate: (1) that it lacked control and direction over the alleged employee and (2) that the services were performed by individuals customarily engaged in an independently established trade, business or profession. *Id.* If the employer fails to satisfy either part of

the § 108.02(12)(b) test, the individuals are deemed employees. *Keeler*, 154 Wis. 2d at 631, 453 N.W.2d at 904. Here, LIRC held that Larson satisfied neither part of the § 108.02(12)(b) test. However, we agree with the circuit court and hold that Larson met his burden under both parts of the test.

We review the findings of the commission, not the circuit court.[1] *Keeler*, 154 Wis. 2d at 632, 453 N.W.2d at 904. The parties dispute the applicable standard of review.

■

Ordinarily, this issue is a mixed question of fact and law.[2] *Id.* However, the parties do not dispute the historical facts in this case. Thus, this issue involves the application of facts to the § 108.02(12)(b), STATS., standard, *see Princess House, Inc. v. DILHR*, 111 Wis.

---

[1] LIRC argues that the circuit court arrived at its decision by incorrectly usurping LIRC's fact-finding function. We disagree with LIRC's characterization of the circuit court's analysis. Instead, we read the circuit court to apply the facts of record to the issue of whether Larson satisfied his burden under the two-part test.

[2] LIRC correctly contends that we must uphold its findings of fact if they are supported by relevant, credible and probative evidence upon which reasonable persons could rely. *See Princess House, Inc. v. DILHR*, 111 Wis. 2d 46, 54, 330 N.W.2d 169, 173-74 (1983). A reviewing court may not substitute its own judgment in evaluating the weight or credibility of the evidence. *Id.* at 54, 330 N.W.2d at 173. Citing *Princess House*, Larson argues that the question of employee status is a question of fact. However, we read *Princess House* to support the proposition in *Keeler v. LIRC*, 154 Wis. 2d 626, 632, 453 N.W.2d 902, 904 (Ct. App. 1990), that the issue is a mixed question where the challenge is to both LIRC's findings of historical fact and the application of those facts to the statutory standard. *See Princess House*, 111 Wis. 2d at 61, 330 N.W.2d at 176.

2d 46, 61, 330 N.W.2d 169, 176 (1983), and LIRC's determination that Larson failed to bear his burden of proof is a conclusion of law, *see Keeler*, 154 Wis. 2d at 632, 453 N.W.2d at 904.

LIRC argues that we owe "considerable deference" to its conclusions of law in this case. We disagree. Although great weight is given to the construction and interpretation of a statute adopted by the administrative agency charged with the duty of applying it, this deference is due only if *"the administrative practice [of applying the statute] is long continued, substantially uniform and without challenge by governmental authorities and courts." Local No. 695 v. LIRC*, 154 Wis. 2d 75, 82-83, 452 N.W.2d 368, 371-72 (1990) (emphasis added; internal quotation omitted). Our independent research shows that LIRC's application of this statute has not gone unchallenged by the courts. *See, e.g., Princess House*, 111 Wis. 2d at 67, 330 N.W.2d at 180 (reversing the commission's holding that employer did not meet its burden of showing that its employees were "free from the employing unit's control or direction"); *Star Line Trucking Corp. v. DILHR*, 109 Wis. 2d 266, 281, 325 N.W.2d 872, 879 (1982) (reversing in part the commission's finding of control or direction); *Grutzner S.C. v. LIRC*, 154 Wis. 2d 648, 654, 453 N.W.2d 920, 922 (Ct. App. 1990) (rejecting LIRC's interpretation of "customarily engaged in an independently established business"); *Keeler*, 154 Wis. 2d at 634, 453 N.W.2d at 905 (reversing LIRC's determination on the "independently established business" prong). Thus, there is no clear administrative precedent regarding this issue. Therefore, we are not bound by LIRC's interpretation or application of the facts to

this section, and we review this issue de novo. *See Local No. 695*, 154 Wis. 2d at 82, 452 N.W.2d at 371.

Larson must make a prima facie showing as to each part of the test. *See Keeler*, 154 Wis. 2d at 631, 453 N.W.2d at 904. We begin with the first part of the test—whether the alleged employer has shown that the individual "has been and will continue to be free from . . . control or direction over the performance of [the individual's] services." *See* § 108.02(12)(b)1, STATS. LIRC argues that the following facts show that Larson exercised control or direction over the crew members—his presence during filming, his control over choice of crew members, his input to the direction of crew members, and his right to be present during editing.[3] Although we accept these facts as found by LIRC, we disagree that these facts show control or direction.

We hold that the following uncontradicted evidence was sufficient to establish Larson's prima facie showing under this part. *Cf. Star Line Trucking*, 109 Wis. 2d at 280-81, 325 N.W.2d at 878-79.[4] The crew

---

[3] In its reply brief, LIRC also argues that Larson did not satisfy his burden under the "control or direction" test because substantial freedom from control or direction is not enough—"the question is not merely one of degree." However, LIRC also contends that it is not arguing that the alleged employee must be 100% free from control or direction. Because we are not sure what standard LIRC is attempting to articulate, we decline to address this argument.

[4] In *Star Line Trucking Corp. v. DILHR*, 109 Wis. 2d 266, 280-81, 325 N.W.2d 872, 878-79 (1982), our supreme court considered the following evidence as indicating the alleged employer's lack of control, including: (1) that the truck drivers were free to turn down work from Star Line, (2) that the drivers were skilled operators, (3) that the drivers sometimes hired their own assistants and (4) that the drivers owned their own

members contract to work on individual projects, rather than for fixed periods of time. They are free to turn down work from Larson. They are free to work for other companies, including Larson's competitors. Further, the crew members necessarily have considerable discretion in exercising their special skills based on training and experience. Larson does not have the technical expertise of the crew members and relies on the crew members' expertise to help him achieve his desired result. Although Larson makes suggestions to the director, the director's choices prevail over Larson's suggestions.[5]

In making a "control or direction" determination, we consider an individual's compliance with a putative employer's requests in light of the circumstances and the individual's motivations. For instance, in *Princess House*, voluntary compliance with the alleged employer's policies did not constitute "control or direction" under § 108.02(12)(b)1, STATS. *See Princess House*, 111 Wis. 2d at 68, 330 N.W.2d at 180. Here, the facts show that the crew members' compliance with Larson's suggestions was voluntary. To achieve the desired result and as part of the creative process, the crew members work together in a collaborative manner; we do not consider this voluntary give-and-take evidence of control or direction. Although Larson could

equipment and were responsible for the maintenance of that equipment.

[5] Concerning this fact, LIRC reasoned in its written decision, "That [the director's] choice might prevail when [Larson] is merely expressing such a suggestion does not mean that [Larson] would not be able to have his way if 'push came to shove.'" However, LIRC did not make any findings of fact to support this hypothesis.

389

specify the desired result, he did not exercise control or direction over the means to achieve that result. LIRC has not produced any credible evidence to rebut Larson's prima facie showing. Thus, we conclude that Larson met his burden of showing a lack of control or direction.

■

We next analyze the issue under the second part—whether the services were "performed in an independently established trade, business or profession in which the individual is customarily engaged." *See* § 108.02(12)(b)2, STATS. In applying the facts to the legal question of whether Larson satisfied his burden under this part, we consider the purpose of the Unemployment Compensation Act. As our supreme court stated in *Princess House,* the statute should be "liberally construed to effect unemployment compensation coverage for workers who are *economically dependent* upon others in respect to their wage-earning status." *Princess House,* 111 Wis. 2d at 62, 330 N.W.2d at 177 (emphasis added). Thus, § 108.02(12)(b)2 "is designed to exclude from coverage those persons who are unlikely to be dependent upon others, even though they may perform services for others, because they have their own separately established business." *Princess House,* 111 Wis. 2d at 69, 330 N.W.2d at 180 (construing § 108.02(3)(b)2, STATS., 1981-82, later renumbered as § 108.02(12)(b)2).

■

In *Keeler,* we extracted five factors from Wisconsin cases as guidelines for analyzing whether an employer/employee relationship exists under the Unemployment Compensation Act.[6] *Keeler,* 154 Wis.

---

[6] Those factors are:

390

2d at 633-34, 453 N.W.2d at 904-05. LIRC argues that it correctly applied those factors. We disagree. As LIRC correctly acknowledges, the weight and importance of these factors varies according to the specific facts of each case, and the guidelines are not to be applied mechanically. *Id.* at 634, 453 N.W.2d at 905. Therefore, we do not mechanically apply the five factors here. Moreover, we hold that LIRC applied the five factors in a manner inconsistent with the purpose of the statute—"to effect unemployment compensation coverage for workers who are *economically dependent* upon others in respect to their wage-earning status."[7] *Prin-*

1. Integration—whether the services performed directly relate to the activities conducted by the company retaining those services.

2. Advertising or holding out—whether the alleged employee advertises or holds out to the public or a certain class of customers the existence of its independent business.

3. Entrepreneurial risk—whether the alleged employee assumed the financial risk of the business undertaking.

4. Economic dependence—whether the alleged employee is independent of the alleged employer, performs services and then moves on to perform similar services for another.

5. Proprietary interest—whether the alleged employee owns various tools, equipment, or machinery necessary in performing the services involved, but also including whether the alleged employee has proprietary control, such as the ability to sell or give away some part of the business enterprise.

*See Keeler,* 154 Wis. 2d at 633-34, 453 N.W.2d at 905.

[7] Furthermore, we reject any implication from LIRC's analysis that an "independently established business" must provide services unrelated to the activities conducted by the company retaining these services. LIRC argued that its application of the factor of integration also indicates that the crew members are employees. This factor considers how related the alleged employee's services are to the activities of the business retaining those services. *Keeler,* 154 Wis. 2d at 633, 453 N.W.2d at 905 (citing *Moorman Mfg. Co. v. Industrial Comm'n,* 241 Wis.

*cess House*, 111 Wis. 2d at 62, 330 N.W.2d at 177 (emphasis added).

■

As LIRC correctly contends, economic dependence is not a matter of how much money an individual makes from one source or another. Instead, it refers to the survival of the individual's independently established business if the relationship with the putative employer ceases to exist. *See Princess House*, 111 Wis. 2d at 70, 330 N.W.2d at 181. If the individual's business would also cease to exist, this fact is probative of an employer/employee relationship. *See id*. Nonetheless, LIRC, in its written decision, relied on evidence concerning percentage of income received from Larson to conclude that Larson did not meet his burden of showing that the crew members were economically independent. Under *Princess House*, we hold that LIRC's conclusion was an error of law.

---

200, 5 N.W.2d 743 (1942)). For instance, in *Moorman*, our supreme court used the example of an alleged employer who hires a tinsmith to repair its gutters; the alleged employer's business is unrelated to the repair or manufacture of gutters. Our supreme court concluded that the tinsmith would not, in this circumstance, be the employee of the alleged employer. *Id.* at 206, 5 N.W.2d at 745. Applying *Moorman* to the facts of this case, LIRC contends, "[I]t is difficult to imagine a case in which the services are more integrated into the business of an employer . . .." We disagree with LIRC's reading of the *Moorman* holding. Under *Moorman*, if the alleged employee performs services not directly related to the alleged employer's business, this fact would tend to show that the individual is not an employee. However, the converse is not true—all individuals who perform services related to the activities conducted by the company retaining these services are not by that factor alone deemed employees under the Unemployment Compensation Act.

We further hold that the following facts show that the crew members are not economically dependent on Larson and that their independently established businesses exist "separate and apart from the relationship" with Larson and would "survive the termination of that relationship." *See Princess House*, 111 Wis. 2d at 70, 330 N.W.2d at 181 (internal quotation omitted). During the administrative hearing, one individual testified that he typically, during a one-year period of time, works for about twelve different companies. He sometimes turns down work from Larson because of previous work commitments. Another individual works for Larson as both a director and an editor. She testified that she does business with Larson and others, including Larson's competitors, under the company name of Ranch Productions and her payment is made out to Ranch Productions. Additionally, the evidence showed that the other crew members worked for several enterprises other than Larson's, either on a "free-lance" basis or as employees.

We also conclude that the facts show that these individuals assumed the financial risk of their business undertakings. Under *Keeler*, entrepreneurial risk is one factor that can be considered in the determination of whether an independently established business exists. *Keeler*, 154 Wis. 2d at 633, 453 N.W.2d at 905. Some of the individuals incurred the expenses of office supplies, business cards, equipment, mileage, phone expenses and advertising. They had their own invoicing systems for services rendered. One individual testified that he pays to be listed in a directory of freelancers in the film production industry. Although these facts do not show the financial risk of the magnitude

incurred by Larson, the magnitude of the risk is not, by itself, determinative. Instead, the proper consideration is whether the facts are probative of "an enterprise created and existing separate and apart from the relationship with the particular employer." *See Princess House*, 111 Wis. 2d at 70, 330 N.W.2d at 181 (internal quotation omitted). We hold that these facts show that the crew members set up separate businesses and provided their services out of those businesses.

Furthermore, crew members testified that they chose to work on a "free-lance" basis for the freedom it affords them. LIRC correctly contends that the question of employee status is not determined by the individual's labels or agreements. *See Goldberg v. DILHR*, 168 Wis. 2d 621, 626, 484 N.W.2d 568, 570 (Ct. App. 1992). However, we hold that this testimony is probative of whether the alleged employee assumed the financial risk of the business undertaking, including the risk of unemployment.

LIRC also contends that Larson was not an "independently established business" under the proprietary interest test. *See Princess House*, 111 Wis. 2d at 73, 330 N.W.2d at 182. The test is: "for an individual to be customarily engaged in an independently established trade, business or profession, it must be such a business as the person has a proprietary interest in, an interest which [the person] alone controls and is able to sell or give away." *Id.* at 73-74, 330 N.W.2d at 183 (internal quotation omitted). LIRC argues that the seven individuals are not in separately established businesses because they do not have businesses which they can sell or give away—they "merely had their services which they could trade for a fee." However, our

supreme court set forth the proprietary interest test as one reasonable interpretation of "independently established business," and the supreme court did not reason based on this test alone.[8] *Princess House*, 111 Wis. 2d at 73, 330 N.W.2d at 182-83. Furthermore, we do not read the supreme court to foreclose "independently established business" status from all individuals whose businesses depend on their own particular talents and not upon an extensive personnel pool or equipment inventory. Businesses based on the provision of creative services are common in the film industry. *See Home Box Office, Inc. v. Directors Guild of America, Inc.*, 531 F. Supp. 578, 593-94 (S.D.N.Y. 1982), *aff'd*, 708 F.2d 95 (2d Cir. 1983).[9] Thus, even though the facts do not show that the crew members could sell their businesses, we consider that factor in light of film industry practices.

Because we hold that Larson satisfied his burden under both parts of the § 108.02(12)(b), STATS., test, we affirm the order of the circuit court.

*By the Court.*—Order affirmed.

[8] The supreme court also held that the dealers did not have separate businesses that would survive the termination of the contractual relationships with Princess House. Therefore, the businesses were not independently established. *Princess House*, 111 Wis. 2d at 73, 77, 330 N.W.2d at 182, 184.

[9] In *Home Box Office, Inc. v. Directors Guild of America, Inc.*, 531 F. Supp. 578 (S.D.N.Y. 1982), *aff'd*, 708 F.2d 95 (2d Cir. 1983), the court held that certain free lance workers were employees. However, that holding must be considered in light of its collective bargaining context.