JEFFERSON COUNTY, Petitioner-Appellant,

v.

WISCONSIN EMPLOYMENT RELATIONS COMMISSION,
AFSCME District Council 40, Respondents-
Respondents.

Court of Appeals

*No. 93–2778. Submitted on briefs July 14, 1994.—Decided
September 22, 1994.*

(Also reported in 523 N.W.2d 172.)

For the petitioner-appellant the cause was submitted on the briefs of *Robert M. Hesslink, Jr.,* and *Natalie M. King of Hesslink Law Offices, S.C.,* of Verona.

For the respondent-respondent Wisconsin Employment Relations Commission the cause was submitted on the brief of *James E. Doyle,* attorney general, and *David C. Rice,* assistant attorney general.

For the respondent-respondent AFSCME District Council 40 the cause was submitted on the brief of *Bruce F. Ehlke* of *Lawton & Cates, S.C.,* of Madison.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

EICH, C.J.   Jefferson County appeals from a judgment affirming a decision of the Wisconsin Employment Relations Commission. The commission ruled that the County committed a prohibited practice under the Municipal Employment Relations Act (MERA) when it refused to apply the "contingency pay" provisions of its existing pay plan applicable to nonrepresented employees during initial contract negotiations with several recently created bargaining units. The issue is whether the commission erred in holding that, by so doing, the County impermissibly

altered the *status quo* with respect to employee wages, hours and working conditions during the negotiations. The parties also dispute the standard of review applicable to the commission's decision.

We conclude that the appropriate standard of review in this case is deferential: whether the commission could reasonably conclude that the County's actions violated its duty to bargain with the union representing the affected employees. We answer the question in the affirmative and affirm the judgment.

The facts are not in dispute. Several years ago, Jefferson County adopted a pay plan that contained provisions for "contingency pay" applicable solely to its nonrepresented employees. Contingency pay is initially granted to an employee with ten years in a position and is increased after the fifteenth year, based on years of service and "on the basis of merit as established by the employee's work performance and after written recommendation by the department head and approval of the [County] Personnel Committee." Under the plan, the increases do not automatically go into effect when the employee achieves a certain longevity in the position, but are contingent upon satisfactory work performance.

In 1990, the American Federation of State, County and Municipal Employees became the certified bargaining representative of the County's courthouse and health agency professional employees and began negotiations with the County on behalf of the new bargaining units. While the negotiations were proceeding, two employees who were members of the new bargaining units attained ten years in county service and a third reached the fifteen-year level, so as to become eligible for either an initial award or an increase in contingency pay. Because the three employ-

ees were now represented by the union in the initial contract negotiations, the County declined to apply the contingency pay provisions of the pay plan to them, believing that it was required to do so in order to maintain the *status quo* during the contract negotiations.

The union filed a prohibited practices complaint against the County and the commission ruled that the County's actions with respect to the three employees disturbed the *status quo* during bargaining and thus constituted a prohibited practice under the act. The County sought judicial review and the circuit court affirmed the commission's decision.

## I.  Scope of Review

We, of course, review the commission's decision, not the circuit court's. *Lewandowski v. State*, 140 Wis. 2d 405, 409, 411 N.W.2d 146, 148 (Ct. App. 1987). The County argues that our review should be *de novo*, while the commission maintains that its decision is entitled to deference.

Both parties acknowledge that the issue before us involves the interpretation and application of a statute and is thus one of law. *See Lewandowski*, 140 Wis. 2d at 409, 411 N.W.2d at 148. As a general rule, we review legal issues independently; however, certain legal determinations of administrative agencies are entitled to deferential review. And while the supreme court and this court have, over time, described the extent of that deference in varying terms, we agree with the commission that, where deference is appropriate, the question is one of the reasonableness of the agency's decision.

In *Carrion Corp. v. DOR*, 179 Wis. 2d 254, 264-65, 507 N.W.2d 356, 359 (Ct. App. 1993), we discussed the

appropriate level of deference to be applied to an administrative agency's legal conclusions:

> The appeal . . . involves review of the [Tax Appeals C]ommission's interpretation and application of statutes—issues of law which we generally review *de novo*. We do, however, accord varying degrees of deference to an administrative agency's interpretation of a statute it has been legislatively charged to administer. *West Bend Educ. Ass'n v. WERC*, 121 Wis. 2d 1, 11-12, 357 N.W.2d 534, 539 (1984). Thus, we will defer to the agency's interpretation of such a statute when that interpretation "is of long standing" or "entails its expertise, technical competence and specialized knowledge," or when "through interpretation and application of the statute, the agency can provide uniformity and consistency in the field of its specialized knowledge." *Id.* The supreme court also has held that "[w]here a legal question is intertwined with factual determinations or with value or policy determinations . . . [we] should defer to the agency which has primary responsibility for determination of fact and policy." *West Bend*, 121 Wis. 2d at 12, 357 N.W.2d at 539-40.

(Citation omitted.)[1]

In regard to the different ways the cases have described the nature and degree of that deference, we said in *Carrion* that

> the most recent statements on the subject by the supreme court have solidified the rule to provide that in cases where deference is appropriate under

---

[1] The degree of deference owed to an agency's interpretation of the laws it administers has variously been described as "great weight," "due weight" or "great bearing." *Carrion Corp. v. DOR*, 179 Wis. 2d 254, 265, 507 N.W.2d 356, 359 (Ct. App. 1993).

the standards ... discussed [above], the deference to be accorded the agency's interpretation—however it may be characterized—is this: "[W]e will affirm the [agency's] interpretation of the statute if it is reasonable, even if another conclusion would be equally reasonable." *DILHR v. LIRC*, 161 Wis. 2d 231, 245, 467 N.W.2d 545, 550 (1991); *see also Lisney*, 171 Wis. 2d at 506 n.3, 493 N.W.2d at 16. Stated conversely, "[a] court does not ... give deference to an agency's interpretation of a statute when the court concludes that the agency's interpretation directly contravenes the words of the statute, is clearly contrary to legislative intent, or is otherwise unreasonable or without rational basis." *Id.* at 506, 493 N.W.2d at 16.

*Carrion*, 179 Wis. 2d at 265, 507 N.W.2d at 359.[2]

In *School Dist. of Drummond v. WERC*, 121 Wis. 2d 126, 132-33, 358 N.W.2d 285, 288 (1984), the supreme court stated that "[w]hen the legislature charges an administrative agency to apply and enforce a particular statute as it has with [WERC] and ch. 111, STATS., the [commission]'s construction and interpretation of the statute are entitled to great weight and any rational basis will sustain its practical interpreta-

[2] We also noted in *Carrion* the following: (1) "[w]here the agency's interpretation goes against the language of the statute being interpreted, or its legislative intent—or if it is inconsistent with the constitution or judicial authority—it is, by definition, unreasonable"; and (2) "where the case is one of first impression—where 'there is no evidence [that the agency has] any special expertise or experience' on the subject matter of the statute being interpreted—'the weight to be afforded [the] agency interpretation is no weight at all.' *Local No. 695 v. LIRC*, 154 Wis. 2d 75, 84, 452 N.W.2d 368, 372 (1990)." *Carrion*, 179 Wis. 2d at 265-66 n.3, 507 N.W.2d at 359-60 (citation omitted).

tions." And while the court noted in *Drummond* that such a deferential standard of review will be employed only where the commission's interpretation is "long continued" and "substantially uniform," as opposed to being "one of first impression," it was quick to acknowledge the commission's experience in determining "subjects of mandatory or permissible bargaining" under MERA and applied the deferential standard to the commission's determination in that case. *Id.* at 133, 358 N.W.2d at 289. We see no reason not to apply that standard to the commission's determination of a prohibited practice under § 111.70(3)(a), STATS.

■

Among other things, it is a prohibited labor practice under § 111.70(3)(a)1 and 4, STATS., for a municipal employer to either interfere with municipal employees in the exercise of their rights to bargain collectively, or to refuse to bargain collectively with the employees' union. The commission has, for many years, followed the well-established rule that an employer has a duty to maintain the *status quo* with respect to wages, hours and conditions of employment during contract negotiations, and that an employer's "unilateral change" in employment conditions or wages breaches the duty to bargain collectively. *See NLRB v. Katz*, 369 U.S. 736, 742-746 (1962); *School Dist. of Wisconsin Rapids*, No. 19084-C, op. at 14 (WERC Mar. 22, 1985).

Prior to 1985, the commission had taken a narrow, "static" view of the *status quo* concept, especially with respect to changes in compensation, looking only to see whether wages had remained "frozen" during contract negotiations. *Wisconsin Rapids,* No. 19084-C at 16-17 (discussing *Menasha Joint Sch. Dist.*, No. 16589-B, (WERC Sept. 4, 1981), *rev'd,* No. 81-CV-1007 (Winnebago County Cir. Ct. Aug. 15, 1983)). If they had been

frozen, the *status quo* had been maintained; if they had changed, it had not.

Then, in *Wisconsin Rapids*, the commission, citing a national trend in both private and public sector labor relations decisions, expressly adopted a "dynamic" view of the *status quo* in duty-to-bargain cases, recognizing " 'regular and consistent past pattern[s] of changes in employee status.' " *Wisconsin Rapids*, No. 19084-C at 14 (quoting ROBERT A. GORMAN, BASIC TEXT ON LABOR LAW: UNIONIZATION AND COLLECTIVE BARGAINING 450 (1976)). Thus, said the commission, where history showed "changes in compensation . . . upon employe[e] attainment of specified levels of experience . . . etc., the employer is permitted *and required* to continue to grant such changes . . . upon the specified attainments . . . during negotiations . . . ." *Id.* at 17-18 (emphasis added). The commission has applied its "dynamic" view of the *status quo* in other cases. *See, e.g., Webster Educ. Ass'n*, No. 21312-B, op. at 7-9 (WERC Sept. 19, 1985); *City of Brookfield*, No. 19822-C, op. at 7 (WERC Nov. 21, 1984).

We thus do not consider the "dynamic *status quo*" issue to be one of first—or even nearly first—impression. Rather it represents a modification or extension of a rule the commission has long followed, and the modified rule itself has been in existence and applied for nearly a decade. We are satisfied that this is a proper case for a deferential standard of review.

## II.  *The Reasonableness of the Commission's Decision*

As indicated, the commission, applying a "dynamic" view of the *status quo* requirement, looked to "the language of the existing compensation plan for the previously unrepresented employe[e]s, as histori-

cally applied," and concluded that the County committed a prohibited labor practice under § 111.70(3)(a), STATS., when it refused to consider granting the contingency pay increases to the three employees.

The County does not challenge the underlying principle that

> "conditions of employment" are to be viewed dynamically, over a period of time, and the status quo against which the employer's "change" is considered must take account of any regular and consistent past pattern of changes in employee status. Employer modifications consistent with such a pattern are not a "change" in working conditions at all. Indeed, if the employer, without bargaining from the union, *departs* from that pattern by withholding benefits otherwise reasonably expected, this is a refusal to bargain . . . .

*Wisconsin Rapids*, No. 19084-C at 14 (quoting GORMAN, BASIC TEXT ON LABOR LAW: UNIONIZATION AND COLLECTIVE BARGAINING at 450).

Rather, the County maintains that where a change in compensation is in no sense automatic and instead involves substantial employer discretion in determining eligibility, timing and amount, the employer may not make the change without first bargaining with the union. *See Katz*, 369 U.S. at 746-47; *NLRB v. Allis-Chalmers Corp.*, 601 F.2d 870, 875-76 (5th Cir. 1979). If, then, the employees' pay increases in this case involved the exercise of "substantial discretion" on the County's part, it was not a violation of § 111.70(3)(a), STATS., to withhold the contingency pay increases pending the contract negotiations.

In its decision, the commission noted that the manner in which the County's compensation plan had been

applied over the years indicated that ten-year employees with satisfactory performance in their jobs had routinely received wage supplements of twelve cents per hour, and those with fifteen or more years of service (and satisfactory performance) had received increases of twenty-four cents per hour. Thus, concluded the commission: "The wage *status quo* the County was obligated to maintain during bargaining over initial contracts included continued application of the wage supplement plan to employe[e]s now represented by the Union." And the County's "failure to maintain this aspect of the wage *status quo*" violated the statute. With respect to the County's "substantial employer discretion" argument, the commission stated that because "the timing, amounts, and eligibility standards are all established by the plan . . . there is no substantial exercise of employer discretion" in implementing the contingency pay program.

The County argues, and we agree, that there is no "right" to the increases. They are not automatic. They depend upon length of service *and* on satisfactory work performance. The commission found in this case, however, that one of the employees was informed that she would not receive any contingency pay—despite the fact that the increase was recommended by her department head—solely "because she was represented by a union." Similarly, the other two employees were advised that they would not be receiving contingency pay because of their union membership. Additionally, the commission found that, with respect to all three employees, "[t]he decision not to implement contingency pay and/or increases in contingency pay was not based upon their job performance."

It thus appears that the County's action short-circuited the contingency pay procedures solely on the

657

basis of the employees' union membership and without any consideration of job performance. Indeed, as we have indicated, one of the employees was ruled ineligible despite meeting *both* the longevity and performance requirements. And, as the commission points out, there is no evidence in the record of any County employees ever being denied contingency pay or contingency pay increases for any reason other than unsatisfactory work performance.

Since the timing, amount and eligibility for both initial contingency pay and subsequent increases—given satisfactory work performance—were set forth in the pay plan, and since the County did not exercise "substantial discretion" in determining whether to grant the increases, the commission could reasonably conclude that the County had failed to maintain the wage *status quo* during contract negotiations. While there is, obviously, some degree of discretion in the supervisors' evaluations of the employees, we agree with the commission that such evaluations are routinely undertaken in government pursuant to well-established systems for assessing job performance. On this record we cannot brand as unreasonable the commission's conclusion that such decisions do not involve the type of "substantial employer discretion" that would take the County's actions out of the *status quo* rule.

*By the Court.*—Judgment affirmed.