CADOTT EDUCATION ASSOCIATION, Petitioner-Appellant,

v.

WISCONSIN EMPLOYMENT RELATIONS COMMISSION,
Respondent-Respondent.

Court of Appeals

*No. 95–0690. Submitted on briefs July 31, 1995.—Decided
September 26, 1995.*

(Also reported in 540 N.W.2d 21.)

46

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Stephen Pieroni*, staff counsel, and *Chris Galinat*, associate counsel of Wisconsin Education Association Counsel of Madison.

On behalf of the respondent-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *John D. Niemisto*, assistant attorney general.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. Cadott Education Association appeals a circuit court order affirming a Wisconsin Employment Relations Commission decision dismissing the association's prohibited practice complaint. The association's complaint alleged that the School District of Cadott Community had failed to bargain with employee representatives before enacting a policy whereby employees who were on sick leave the day before and after a paid holiday were not paid for

the holiday and instead were charged additional sick leave for their absence on the holiday. On appeal, the association argues: (1) the contractually-guaranteed paid holidays constitute a term or condition of employment and are therefore a mandatory subject of bargaining; (2) the district did not bargain about eligibility for holiday pay; and (3) the district committed a prohibited practice when it adopted and implemented a policy of denying holiday pay to those employees on sick leave the day before and the day after a paid holiday.

We agree with the association and WERC that eligibility for holiday pay is a mandatory subject of bargaining. However, we conclude it was reasonable for WERC to conclude that the parties' agreement addresses the employees' holiday pay rights and that the district has no further obligation to bargain over the issue of eligibility for holiday pay. Therefore, we affirm the circuit court order affirming WERC's decision dismissing the association's prohibited practice complaint.

## FACTS

The facts that led to the filing of the prohibited practice complaint are undisputed. District employee Andy Edgell was on medical leave from November 9 to December 11, 1992. When Edgell returned to work, he examined his accrued sick leave allotment and discovered that seven and one-half hours had been deducted for Thanksgiving Day, a paid holiday under the parties' 1992-94 collective bargaining agreement. Edgell reported this deduction to the chief negotiator of the association's bargaining unit, of which Edgell is a member. The association filed a grievance with the district, asking that Edgell be made whole by returning

the seven and one-half hours to his sick leave allotment and that the district refrain in the future from deducting sick leave for paid holidays.

The district rejected the association's request, stating that the practice of not giving holiday pay to employees absent the day before and after a paid holiday had been used in the past and did not violate the parties' contract. The board of education also denied the association's grievance. In response, the association requested arbitration of the grievance, as provided for in the parties' agreement. The parties selected an arbitrator, but no arbitration date was agreed upon. The association subsequently filed a prohibited practice complaint with WERC on behalf of Edgell and four other bargaining unit members who had incurred the disputed sick leave deduction. The complaint alleged that the district interfered with, restrained and coerced municipal employees in the exercise of their rights guaranteed in § 111.70(2), STATS.[1] The complaint further alleged that the district violated § 111.70(3)(a)1 and 4, STATS.,[2] when it denied some employees holiday pay for paid holidays and instead

---

[1] Section 111.70(2), STATS., provides in part:

RIGHTS OF MUNICIPAL EMPLOYES. Municipal employes shall have the right of self-organization, and the right to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in lawful, concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . .

[2] Section 111.70(3)(a), STATS., provides in part:

PROHIBITED PRACTICES AND THEIR PREVENTION. (a) It is a prohibited practice for a municipal employer individually or in concert with others:
1. To interfere with, restrain or coerce municipal employes in the exercise of their rights guaranteed in sub. (2).
. . . .

deducted additional sick leave for these employees without first bargaining with the association.

WERC's hearing examiner issued findings of fact, conclusions of law and an order dismissing the association's prohibited practice complaint. *Cadott Educ. Ass'n,* Dec. No. 27775-B (Schiavoni, 1/94). The association appealed that portion of the hearing examiner's order dismissing the prohibited practice complaint. WERC adopted the majority of the hearing examiner's findings of fact and replaced several findings with two of its own, including the finding that the parties' 1992-94 contract addressed the subject of holiday pay. *Cadott Educ. Ass'n,* Dec. No. 27775-C (WERC, 6/94) at 2-3. In its conclusions of law, WERC concluded:

> Because the subject of holiday pay is addressed in the parties' 1992-1994 contract, the parties to the 1992-1994 contract have no statutory obligation to bargain with each other over the issue of holiday pay during the term of the 1992-1994 contract. Thus, the Respondent District's conduct is not violative of Secs. 111.70(3)(a) 4 or 1, STATS.

*Id.* at 4. Accordingly, WERC affirmed the examiner's order dismissing the prohibited practice complaint. *Id.*

The association petitioned the circuit court for judicial review of the administrative decision. The circuit court affirmed WERC's decision. The association now appeals that portion of WERC's decision dismissing its prohibited practice complaint.

---

4.   To refuse to bargain collectively with a representative of a majority of its employes in an appropriate collective bargaining unit.

## STANDARD OF REVIEW

■ We review WERC's decision, not the circuit court's. *Jefferson County v. WERC*, 187 Wis. 2d 647, 651, 523 N.W.2d 172, 174 (Ct. App. 1994). In this case, WERC issued both findings of fact and conclusions of law. This court must uphold an administrative agency's findings of fact if they are supported by relevant, credible and probative evidence upon which reasonable persons could rely; we may not substitute our own judgment in evaluating weight or credibility of evidence. *Larson v. LIRC*, 184 Wis. 2d 378, 386 n.2, 516 N.W.2d 456, 459 n.2 (Ct. App. 1994). This court shall, however, set aside agency action or remand the case to the agency if it finds that the agency's action depends on any finding of fact that is not supported by substantial evidence in the record. Section 227.57(6), STATS. "Substantial evidence" necessary to support an administrative decision is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *City of La Crosse Police & Fire Comm'n v. LIRC*, 139 Wis. 2d 740, 765, 407 N.W.2d 510, 520 (1987).

■ The general rule for review of conclusions of law is that reviewing courts are not bound by the agency's conclusions of law. *West Bend Educ. Ass'n v. WERC*, 121 Wis. 2d 1, 11, 357 N.W.2d 534, 539 (1984). Our supreme court discussed the appropriate standards of review of an agency's legal conclusions and statutory interpretation in *Jicha v. DIHLR*, 169 Wis. 2d 284, 290-91, 485 N.W.2d 256, 258-59 (1992):

> This court has generally applied three levels of deference to conclusions of law and statutory interpretation in agency decisions. First, if the

administrative agency's experience, technical competence, and specialized knowledge aid the agency in its interpretation and application of the statute, the agency determination is entitled to "great weight." The second level of review provides that if the agency decision is "very nearly" one of first impression it is entitled to "due weight" or "great bearing." The lowest level of review, the *de novo* standard, is applied where it is clear from the lack of agency precedent that the case is one of first impression for the agency and the agency lacks special expertise or experience in determining the question presented. (Emphasis in original; citations omitted.)

The association argues that WERC's decision is entitled to only due weight because the decision represents "a sub silentio departure from its policy requiring that waivers be shown by language that is clear and unmistakable." WERC argues its decision is entitled to great weight. We disagree with the association that WERC's decision marks such a departure from previous policy that it deserves less deference. For this reason, and because this case does not present an issue of first impression or nearly first impression, we conclude that the great weight standard is appropriate. Thus, our review of WERC's legal conclusions is limited to whether the conclusions have a rational basis, whether they are reasonable. *Jefferson County*, 187 Wis. 2d at 653, 523 N.W.2d at 174-75.

## THE PROHIBITED PRACTICE COMPLAINT

The association argues that the issue of eligibility for holiday pay is a mandatory subject of bargaining. Section 111.70(3)(a)4, STATS., imposes on employers a

duty to bargain collectively, as defined in § 111.70(1)(a), STATS., over hours, wages and conditions of employment, and declares the failure to do so a prohibited labor practice. Addressing this issue, WERC in its decision concluded that "[b]ecause eligibility for holiday pay so clearly deals primarily with compensation and benefits to bargaining unit members, that is, wages and conditions of employment," it is a mandatory subject of bargaining. *Cadott Educ. Ass'n*, Dec. No. 27775-C at 7. We agree. The more difficult issue in this case is whether the parties' agreement defines employees' rights to holiday pay.

WERC's decision included the finding of fact that the parties' contract addresses the subject of holiday pay. This finding is, in some respects, a finding of fact. WERC found that the contract includes the following provision: "Paid holidays in the school calendar will be Memorial Day, Thanksgiving and Labor Day." This court must uphold this finding because it is supported by substantial evidence in the record. *Larson*, 184 Wis. 2d at 386 n.2, 516 N.W.2d at 459 n.2. The legal significance of this provision, however, is reviewed as a conclusion of law.

WERC concluded that because the issue of holiday pay eligibility was addressed in the parties' 1992-94 agreement, the district had no duty to bargain with the association and contractual waiver applied. *Cadott Educ. Ass'n,* Dec. No. 27775-C at 8. In its analysis, WERC explained: "[A] municipal employer's duty to bargain during the term of a contract extends to all mandatory subjects of bargaining except those which are covered by the contract or as to which the union has waived its right to bargain through bargaining history or specific contract language." *Id.* at 13 (emphasis

removed). Therefore, if the parties' agreement addresses the issue of holiday pay, there is no violation of the duty to bargain imposed by § 111.70(3)(a)4, STATS. The association argues that while the agreement explicitly lists the paid holidays, it fails to make any reference to eligibility for holiday pay or to a policy that might deny holiday pay for those employees absent the days before and after a paid holiday.

WERC rejected this argument, concluding that although the parties did not specifically address the eligibility issue, the parties had a holiday pay provision that, when read in conjunction with the rest of the contract, defines employees' holiday pay rights. *Cadott Educ. Ass'n*, Dec. No. 27775-C at 14. WERC cited with approval a 1978 WERC decision that addressed whether an employer was obligated to bargain over an employee's right to accrued vacation benefits upon termination. In *Janesville Schools*, Dec. No. 15590-A (Davis, 1/78), *aff'd by operation of law* (WERC, 2/78), WERC's hearing examiner held:

> Although the record clearly indicates that the parties have never specifically discussed [terminating an employee's vacation rights] they have bargained a vacation clause which, in conjunction with other possibly relevant contractual provisions, completely defines an employe's rights or lack thereof to vacation benefits. Although the bargaining agreement does not explicitly focus upon a terminating employe's right to accrued vacation benefits or a myriad of other potential vacation issues which could arise during the term of the agreement, its terms and provisions are nonetheless capable of resolving all such issues. To conclude that the bargaining agreement is silent on the subject because it does not explicitly focus upon said issue would be to

ignore the fact that a contract cannot possibly deal specifically with all the potential problems which are generated in an employer-employe relationship.

*Id.* at 6.

Applying *Janesville*, WERC in this case concluded that the existing contract between the association and the district defined employees' rights to holiday pay:

> Although the parties did not specifically discuss the eligibility issue at the heart of the instant dispute, they do have a holiday pay provision. That provision, when read in conjunction with the rest of the contract, defines employes' holiday pay rights. As was true in *Janesville*, that conclusion ends the inquiry we need to make to resolve the duty to bargain issue. The parties have bargained on holiday pay and are not obligated to bargain further on the issue. The scope of the parties' rights under their bargain need not be defined here and are appropriately left to the grievance arbitration process.

*Cadott Educ. Ass'n,* Dec. No. 27775-C at 14.

The association does not disagree that the facts in *Janesville* are similar to the facts of its case. However, the association argues that *Janesville* was wrongly decided and that "the Commission should not be permitted to compound the error by adopting the *Janesville* rationale." The association argues that instead of adopting *Janesville*, WERC should have looked for guidance from other decisions regarding waiver, such as *City of Appleton*, Dec. No. 14615-C (WERC, 1978).[3]

---

[3] The association also cites *Sheboygan County*, Dec. No. 27692-B (WERC, 3/95); *City of Kenosha*, Dec. No. 16392-A (Yaeger, 12/78), *aff'd by operation of law*, Dec. No. 16392-B

In *City of Appleton*, the parties' contract provided that a police officer who reaches retirement age may have year-to-year recertification until the age of sixty-five, at which time the officer must retire from the police force. *Id.* at 4. WERC concluded that the city committed a prohibited practice when it imposed on police officers the cost of proving physical fitness for recertification to active employment without first bargaining with the policemen's association. *Id.* at 1-2. WERC noted that the cost could not be imposed because the Union "by the contractual language [did not] clearly and unmistakably agree that the employer could impose such costs without bargaining." *Id.* at 5.

Employing this analysis, the association argues that WERC should have examined the contract to determine whether the issue of sick leave substitution (in other words, eligibility for holiday pay) was "clearly and unmistakably" covered by the contract. This argument is misplaced because WERC did examine the contract and concluded that eligibility for holiday pay is part of the holiday pay section that is clearly and unmistakably addressed in the parties' agreement. *Cadott Educ. Ass'n*, Dec. No. 27775-C at 14.

The scope of our review of WERC's decision is limited to whether this conclusion has a rational basis, whether it is reasonable. *Jefferson County*, 187 Wis. 2d at 653, 523 N.W.2d at 174-75. We conclude it is reasonable, for the reasons articulated in *Janesville*, for WERC to conclude that even though the agreement does not explicitly focus on an employee's eligibility for holiday benefits, the agreement is capable of resolving issues surrounding holiday pay. We agree with the examiner in *Janesville*: "To conclude that the bargain-

(WERC, 1979); and *State of Wisconsin*, Dec. No. 13017-D (WERC, 1977).

ing agreement is silent on the subject because it does not explicitly focus upon said issue would be to ignore the fact that a contract cannot possibly deal specifically with all the potential problems which are generated in an employer-employe relationship." *Janesville*, Dec. No. 15590-A at 6.

Here, it must be kept in mind that the association's complaint alleges the district engaged in a prohibited practice because it failed to bargain on eligibility for holiday pay; this is not an action for violation of the parties' contract. Because WERC reasonably concluded that the contract addresses holiday pay rights, the district has not failed to bargain on this issue and has therefore not engaged in that prohibited practice. In essence, WERC concluded that the association is seeking to enforce what it believes is an unconditional right to holiday pay under the terms of the contract. Whether the district violated the agreement by denying some employees holiday pay is an issue regarding the scope of the parties' rights under the contract, an issue appropriately left to the grievance process.[4]

---

[4] The association argues that WERC's decision referring the association to the grievance process is inconsistent with part of its decision affirming the denial of the district's motion to defer to the grievance process (that portion of WERC's decision was not appealed by either party). We disagree. WERC determined it was appropriate to take jurisdiction over the prohibited practice complaint and to decide it on its merits, without deferring to the grievance process. Once the merits of the prohibited practice complaint were determined, it was appropriate to refer further disputes to the grievance process where the issue will be whether the district violated the parties' agreement when it denied employees holiday pay in spite of contract language providing that employees are entitled to holiday pay.

¶ Because it was not unreasonable for WERC to conclude that the agreement addresses the parties' holiday pay rights, we affirm the circuit court's order affirming WERC's dismissal of the association's prohibited practice complaint.

*By the Court.*—Order affirmed.