MAYVILLE SCHOOL DISTRICT, and the Board of Education of the Mayville School District, Petitioners-Appellants,†

v.

WISCONSIN EMPLOYMENT RELATIONS COMMISSION, Respondent-Respondent,

MAYVILLE EDUCATION ASSOCIATION, and Louise Maciejewski, President, Mayville Education Association, Petitioners-Respondents.

Court of Appeals

*No. 93–3281. Oral argument January 19, 1995.—Decided March 2, 1995.*

(Also reported in 531 N.W.2d 397.)

†Petition to review denied.

For the petitioners-appellants the cause was submitted on the briefs of *Edward J. Williams* and *Kirk D. Strang* of *Godfrey & Kahn, S.C.,* of Oshkosh and Madison. There was oral argument by *Edward J. Williams.*

For the respondent-respondent the cause was submitted on the brief of *James E. Doyle,* attorney

general, and *John D. Niemisto*, assistant attorney general, of Madison. There was oral argument by *John D. Niemisto*.

For the petitioners-respondents the cause was submitted on the brief of *Ellen J. Henningsen* of *Wisconsin Education Association Council* of Madison. There was oral argument by *Ellen J. Henningsen*.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

EICH, C.J.   The Mayville School District appeals from an order affirming a decision of the Wisconsin Employment Relations Commission, which sustained a prohibited-practice complaint brought against the district by the Mayville Education Association (the union).

The district asks us to reverse the commission's decision, claiming that: (1) the commission failed to follow its own rules governing the adjudication and review of prohibited-practice complaints when it considered an argument not raised before its hearing examiner; and (2) the commission erroneously concluded that the district's action altered the parties' status quo and thus constituted a prohibited labor practice. An ancillary issue is the scope of our review of the commission's decision.

We conclude that: (1) the commission could properly address a legal argument raised for the first time during its review of the examiner's decision; and (2) the commission could reasonably determine that the district's unilateral action breached the parties' status quo and thus was a prohibited practice within the meaning of the statute.[1] In regard to the scope of our

---

[1] Section 111.70(3)(a)4, STATS., imposes on employers a duty to bargain collectively over hours, wages and conditions of employment, and declares the failure to do so a prohibited labor

review of the commission's decision, we are satisfied that while the dispositive issue is one of law—application of the prohibited-practice statute, § 111.70(3)(a)1 and 4, STATS., to the facts of the case—we will defer to the commission's conclusions, sustaining them if they are reasonable. We affirm the order.

The facts are not in serious dispute. Prior to 1986, health and dental insurance for the district's employees was provided by private carriers. The 1986-87 collective bargaining agreement between the district and the union continued to provide for health and dental insurance plans but did not specify a carrier. The parties had not negotiated a new agreement when the 1986-87 contract expired; as a result, they were in a contract hiatus from July 1, 1987, to February 17, 1989, when they agreed on the terms of a new contract.

During this hiatus period, on August 11, 1987, the district announced that it was switching the employees' health and dental coverage from private carriers to a self-insured, self-funded plan. The self-funded plan was to take effect January 1, 1988, and its terms, provisions and benefits would be identical to those contained in the former private policies.

The union filed a prohibited-practice complaint with the commission, claiming that the district's decision violated its duty to bargain under § 111.70(3)(a), STATS., because its unilateral termination of the

practice. Where, as here, the parties are in a contract hiatus, the employer has a duty to maintain the status quo with respect to wages, hours and conditions of employment; to effect any unilateral change in employment conditions or wages during negotiations for a new contract breaches the duty to bargain collectively. *See Jefferson County v. WERC*, 187 Wis. 2d 647, 654, 523 N.W.2d 172, 175 (Ct. App. 1994).

existing health and dental insurance had the effect of reducing employee benefits.[2] A WERC hearing examiner dismissed the complaint, concluding, among other things, that the change from private insurance to a self-funded plan did not alter the status quo.

The union petitioned the commission for review of the examiner's decision. In its presentation to the commission, the union argued that the district's action altered the status quo because: (a) employees seeking redress for allegedly improper benefit denials "must now sue their employer" rather than proceed against a private outside corporation, and (b) since the "employer" in this case—the district—is an arm of municipal government, the notice-of-claim and damage-cap provisions of § 893.80, STATS., apply.[3] As a result, according to the union, the new plan restricts the employees' remedies.

The commission agreed with the union, concluding as follows:

> Turning to the . . . last wage impact, when the District began to self-fund health benefits, employe[e]s who previously could, if necessary, seek redress for unpaid claims through civil actions against the insurance company [a]re now confronted with the need to sue their employer and

[2] Although the union asserted other statutory violations as well, this appeal concerns only the commission's determination that changing the health and dental insurance violated the parties' status quo.

[3] In its argument to the commission, the union stressed two provisions of § 893.80, STATS.: one requires, as a condition precedent to commencement of legal action, the filing of a notice of claim with the district within 120 days of the event giving rise to the claim; the other limits damages recoverable in tort actions against the district to $50,000. Section 893.80(1)(a) and (3).

with access to less desirable remedies due to the
requirements and limitations of Sec. 893.80, Stats.
... [T]he status quo does not give the District
the right to eliminate this wage [benefit].

The circuit court affirmed the commission in all
respects. However, the district has appealed only what
it calls the "sec. 893.80 issue."

## *I.  The Procedural Rules Determination*

The district's first argument is based on its asser-
tion that the union did not raise the "issue" of the
application of § 893.80, STATS., in its complaint to
WERC or during the course of the proceedings before
the hearing examiner, but argued the point for the first
time in the commission review proceedings. The dis-
trict contends that the commission could not properly
apply § 893.80 in deciding the case because to do so
would violate its own procedural rules governing
appeals from hearing examiners' decisions—rules that
provide, among other things, that examiners' decisions
are to be made on "all . . . issues of fact and law
presented on the record." WIS. ADM. CODE § ERC
12.06(2).

The commission concedes that the union argued
the effect of § 893.80, STATS., for the first time before
the commission. The commission contends, however,
that what the district persists in labeling a "new issue"
was simply a legal argument offered by the union in
support of the position it had been advocating through-
out the case.

The district offers no authority for the proposition
that the commission's power to review its examiners'
nonfinal decisions is so limited, and we are satisfied
there is none. There is authority, however, for the prop-

386

osition that the agency, not the examiner, is the sole and primary decision maker in such proceedings. In *Transamerica Ins. Co. v. DILHR*, 54 Wis. 2d 272, 281 n.11, 195 N.W.2d 656, 662 (1972), for example, the supreme court recognized that the Department of Industry, Labor and Human Relations (DILHR), like its predecessor, the Industrial Commission, " 'does not act as an appellate body' " when reviewing orders of its hearing examiners but hears and considers the case " 'in an original proceeding' " in which it " 'make[s] its own determination' " on the facts and law. (Quoted source omitted.) Such a conclusion follows, said the court, from the fact that DILHR—like WERC—is authorized by statute to affirm, reverse, set aside or modify its examiners' findings and legal conclusions under § 102.18(3), STATS. *Transamerica*, 54 Wis. 2d at 281, 195 N.W.2d at 661-62.[4]

We are thus satisfied that until the internal review or appeal process is completed, a hearing examiner's

---

[4] *State ex rel. Meeks v. Gagnon*, 95 Wis. 2d 115, 289 N.W.2d 357 (Ct. App. 1980), the principal case cited in support of the district's argument on this issue, is inapposite, for that case dealt solely with the rules governing the *conduct* of an agency's hearings. The issue in this case is not the manner in which the hearings were conducted before the examiner but whether the commission is precluded from considering legal arguments that were not first presented to the examiner. As indicated, we answer that question in the negative.

Nor is there here, as there was in *Gagnon*, any showing that the district was prejudiced by the commission's consideration of the union's argument. As the commission points out, the district did not object to such consideration, nor did it identify or suggest any factual issues that might necessitate a reopening of the record for the taking of further testimony with respect to the argument or otherwise place it at a disadvantage.

decision is recommendatory only, for it is the agency, not the hearing officer, that is the primary fact finder in a case. *Burton v. DILHR*, 43 Wis. 2d 218, 222, 168 N.W.2d 196, 197 (1969), *modified on other grounds*, 170 N.W.2d 695 (1969).[5] We reject the district's argument that the commission's decision must be reversed for violation of its own procedural rules.[6]

## II. The Prohibited-Practice Determination

### A. Scope of Review

In *Jefferson County v. WERC*, 187 Wis. 2d 647, 651-55, 523 N.W.2d 172, 174-76 (Ct. App. 1994), we held that our review of a WERC status quo determina-

___

[5] There are, as the commission points out, situations where rejection of an examiner's proposed findings and conclusions might well deny procedural due process, as in cases where the examiner's factual findings are based on determinations of witness credibility. In such situations, however, the supreme court has required that the agency make a record of its consultation with the examiner to gather his or her impressions of the credibility of the witnesses and, in addition, "include in a memorandum opinion an explanation for its disagreement with the examiner." *Carley Ford, Lincoln, Mercury, Inc. v. Bosquette*, 72 Wis. 2d 569, 575, 241 N.W.2d 596, 599 (1976).

[6] The district also argues that the commission's consideration of the "§ 893.80[, STATS.,] issue" violates the provisions of § 227.57(6), STATS., one of the statutes governing judicial review of agency decisions, which provides in part that a court is to set aside or remand an agency's decision if the decision "depends on any finding of fact that is not supported by substantial evidence in the record." The existence of § 893.80 need not be "proved" or otherwise established by evidence before its application to a case may be argued to an agency. We do not see § 227.57(6) as in any way limiting the legal arguments that can be made to the commission in its review of an examiner's decision.

tion under § 111.70(3)(a)1 and 4, STATS., was deferential in light of the commission's experience in making such determinations.[7] Relying on two earlier cases, *Glendale Professional Policemen's Ass'n v. City of Glendale*, 83 Wis. 2d 90, 264 N.W.2d 594 (1978), and *City of Brookfield v. WERC*, 87 Wis. 2d 819, 275 N.W.2d 723 (1979), the district argues that we should employ a de novo standard of review.

In *Glendale*, WERC was faced not with applying a labor statute but with "the Commission's [own] power to enforce [the statute] in the first instance in . . . light of [a nonlabor] statute." *Glendale*, 83 Wis. 2d at 100, 264 N.W.2d at 600. Such an issue, said the court, concerns "the relationship between two state statutes,

[7] In so holding, we quoted at length from *Carrion Corp. v. DOR*, 179 Wis. 2d 254, 264-65, 507 N.W.2d 356, 359 (Ct. App. 1993), where we recognized that, while we generally review an agency's interpretation and application of a statute de novo, we should defer to the agency, affirming its interpretation if it is reasonable, where the agency is charged by the legislature with administration and enforcement of the statute and its interpretation is of long standing or involves application of its special experience or expertise—or the legal question is "intertwined" with factual determinations or value or policy judgments.

The rule is not absolute, for, as we also said in *Carrion*, no such deference will be accorded where: (1) the agency's interpretation is contrary to the language of the statute or its legislative intent, or to the constitution or judicial authority; or (2) the case is one of first impression and there is no evidence that the agency has any special expertise or experience on the subject matter of the statute being interpreted. *Carrion*, 179 Wis. 2d at 265-66 n.3, 507 N.W.2d at 359-60. It is true, of course—as the supreme court has recognized—that WERC has had considerable experience in determining subjects of mandatory bargaining under § 111.70(3)(a), STATS. *School Dist. of Drummond v. WERC*, 121 Wis. 2d 126, 133, 358 N.W.2d 285, 289 (1984).

[and thus] is within the special competence of the courts rather than the Commission, and therefore this court need not give great weight to the [agency's] determination of the issue." *Id.* at 100-01, 264 N.W.2d at 600. In *City of Brookfield*, the issue concerned the relationship between a provision of § 111.70, STATS., and its impact on the exercise of various municipal powers enumerated in ch. 62, STATS. The court concluded that it would not accord "persuasive or substantial weight" to the commission's "statutory interpretations beyond the field of labor law." *City of Brookfield*, 87 Wis. 2d at 828, 275 N.W.2d at 727. We think both cases are distinguishable.

The argument in this case—which the commission found persuasive—was that the district's unilateral change in its employee health plan violated the status quo because: (1) employees would now have to proceed directly against the district—their employer—rather than an "outside" party to seek redress for allegedly improper benefit denials; and (2) under § 893.80, STATS., a notice of claim must be filed with the district within 120 days of the event in order to proceed and, further, the district is not liable in tort for any amount in excess of $50,000. From those facts, gleaned from the plain and unambiguous language of § 893.80,[8] the com-

---

[8] Section 893.80, STATS., provides, in pertinent part:

(1)  [N]o action may be brought or maintained against any [school district] . . . unless:

(a)  Within 120 days after the happening of the event giving rise to the claim, written notice of the circumstances of the claim . . . is served on the [district] . . . .

. . . .

(3)  The amount recoverable by any person for any damages . . . in any action founded on tort against any [school district] . . . shall not exceed $50,000 . . . .

mission reasoned that the status quo had been violated.

We do not believe that the commission was construing or interpreting § 893.80, STATS., in reaching that decision. It simply noted that the statute's unambiguous and unchallenged requirements place limitations on union members wishing to challenge benefit denials in court[9]—and that no such requirements or limitations existed under the prior plan. This is thus not a case like *Glendale* or *City of Brookfield* where the merits of the commission's decision depended on its interpretation and harmonization of labor and nonlabor statutes. There was nothing to interpret, construe or harmonize in the commission's reference to § 893.80 in this case; the unambiguous provisions of the statute were simply noted as potential limitations on the employees' enforcement of their legal remedies.

■

We see no reason not to accord the commission's status quo determination any less deference in this case than in any other simply because, as part of the legal justification of that determination, it referred to a nonlabor statute. The commission's decision is a proper subject for deference under *Carrion, Drummond* and *Jefferson County*, and we do not see *Glendale* or *City of Brookfield* as compelling a different result.

---

(4)   No suit may be brought against any [school district] for the intentional torts of its . . . agents or employe[e]s [or] for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

[9] The district does not challenge the fact that § 893.80, STATS., requires the filing of a notice of claim within 120 days, and that the statute caps a district's tort liability at $50,000.

## B. Prohibited-Practice Claim

The district argues first that we should reverse the commission because it improperly considered § 893.80, STATS., in its analysis. The argument appears to proceed as follows: (1) the test for determining whether a particular matter is a mandatory subject of bargaining is whether it is "primarily related" to the wages, hours and conditions of employment of the employees of the Mayville School District; and (2) because § 893.80 is a statewide legislative declaration primarily related to "government management and public policy," it cannot possibly be primarily related to the Mayville employees' wages or working conditions.

First, we agree with the commission's characterization of this and several of the district's other arguments as "variations of a single theme, namely, that [§ 893.80, STATS.,] does not affect [wages or] benefits." We also agree that the district's argument is largely misplaced because the scope of our review of the commission's decision is limited to whether it has a rational basis, that is whether it is reasonable. *Jefferson County*, 187 Wis. 2d at 653, 523 N.W.2d at 174-75. We do not examine the issue anew.

Second, we note that the impact of public policy decisions on employee wages has always been recognized as a mandatory subject of bargaining. *See, e.g., City of Brookfield*, 87 Wis. 2d at 830, 833, 275 N.W.2d at 728, 730, where the supreme court held that while a city's *decision* to lay off employees for budgetary reasons was "primarily related to the exercise of municipal powers and responsibilities and the integrity of the political processes of municipal government," and thus not a mandatory subject of bargaining, there was a

primary relation between the *impact* of the layoffs and the remaining employees' working conditions, with the result that the issue of the impact of the layoffs was ruled to be a mandatory subject of bargaining.

The district next urges us to reverse on grounds that one of the assertions in the commission's analysis—that, under the prior plan, employees had always been able to file civil suits seeking redress for unpaid claims without having to sue the district and without being subject to the requirements and limitations of § 893.80, Stats.—is untrue.

The district has not referred us to any evidence in the record to support that assertion, however. It relies solely on a remark by the commission early in its decision to the effect that the former insurer, the Wisconsin Education Association Trust, was regulated by the federal government under the Employee Retirement Income Security Act (ERISA), not the state, from 1975 to 1985, and that such federal regulation is preemptive. The district maintains that, as a result, employees may have had a federal action under the prior plan but could not sue in state court to enforce their rights.

We are uncertain of the point the district attempts to make with such assertions. Prior to the changeover, an employee could prosecute a challenge—whether in state or federal court—without suing his or her employer. Moreover, there is no question that, regardless of ERISA regulations, the insurer's bad faith in honoring a claim could be redressed in a state court action. *See Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 271 N.W.2d 368 (1978) (recognizing a state court cause of action for an insurer's bad-faith refusal to honor a claim). Additionally, as the union points out, the employees' former dental insurer, Blue Cross, was

never subject to ERISA regulation and could be sued in state court all along.

We agree with the commission that historically the district's employees had remedies available in state court to ensure that the insurer provided their health and dental care benefits in a timely and good-faith manner, and we reject the district's argument.

Next, while agreeing with the proposition that "the means and ease by which an employee acquires access to the underlying insurance benefits has a wage impact," the district argues that § 893.80, STATS., will have no effect on employee actions to recover benefits because such actions will necessarily be in contract, and the statute is applicable only to actions in tort. Thus, says the district, the commission erred in concluding that becoming subject to the statute would change the employees' access to benefits.

In *DNR v. City of Waukesha*, 184 Wis. 2d 178, 190, 191, 515 N.W.2d 888, 892, 893 (1994), the supreme court, overruling language in previous cases, held that the "plain language of [§ 893.80(1), STATS.,] clearly does not limit the application of the notice of claim requirements to tort claims" or to "claims for money damages." Rather, said the court, the notice-of-claim provisions "appl[y] to all causes of action." We reject the district's argument.

We conclude that the commission could reasonably decide that, in certain situations at least, the necessity of suing one's employer to recoup wrongfully withheld benefits, coupled with the statutory limitations and restrictions on such actions under § 893.80(1)(a) and (3), STATS., represented a change in the status quo dur-

ing the contract hiatus[10] because those factors were not present under the former health insurance plan.[11]

*By the Court.*—Order affirmed.

GARTZKE, P.J. (*concurring*). The commission concluded on the facts of this case that the district's

---

[10] It is easy to forget in the flurry of arguments that, as the commission reminds us, its decision

> is concerned only with the District's conduct during the contract hiatus. Arguably the . . . decision does not specifically require the District to bargain concerning its decision to self insure; rather, in this case, only the impact that such a decision has during the contract hiatus on access to benefits presented matters subject to bargaining.

[11] It may be, as the concurring opinion suggests, that the fact that the district's employees may in some circumstances be required to proceed against their employer rather than a private insurer in order to challenge benefit denials would be enough, by itself, to support a determination that the status quo had been altered. The commission's decision in this case, however, is grounded on the combined effect of the two factors, namely, the necessity of suing one's own employer and the necessity of bringing suit now subject to the provisions of § 893.80, STATS. The parties' arguments on appeal have proceeded on that basis. The factors have not been argued separately and we have not been provided any factual basis on which to conclude that the "employer suit," standing alone, is sufficient—other than the union's assertion at one point in its brief that its members are reluctant to sue "the very hand that feeds them."

Whatever the case, the commission considered the evidence and arguments presented by the parties on the point and grounded its decision on the combined effect of the two factors. We affirm it on that basis. We do not decide whether, in some future case, we would or would not base a similar decision on the first ground alone.

unilateral change in its employee health plan violated the status quo because employees must now sue their employers for redress of allegedly improper benefit denials. I do not read the commission's decision to turn on the effect of § 893.80, STATS.

For us to pursue an unnecessary examination of § 893.80, STATS., permits a nonmunicipal employer in a future case otherwise on all fours to argue that the majority decision applies only to municipalities. No reason exists for us to license that potential argument.