Dennis W. KOZICH and Marjorie A. Kozich, Petitioners-Respondents,†

v.

EMPLOYE TRUST FUNDS BOARD, Respondent-Appellant.

Court of Appeals

*No. 95–2219. Submitted on briefs February 12, 1996.—Decided July 3, 1996.*

(Also reported in 553 N.W.2d 830.)

†Petition to review denied.

For the respondent-appellant the cause was submitted on the briefs of *James E. Doyle,* attorney general, with *David C. Rice,* assistant attorney general.

For the petitioners-respondents the cause was submitted on the brief of *Steven J. Schooler* of *Lawton & Cates, S.C.,* of Madison.

Before Eich, C.J., Dykman and Sundby, JJ.

EICH, C.J.   The Wisconsin Employe Trust Funds Board appeals from an order reversing a decision of the Group Insurance Board relating to Dennis and Marjorie Kozich's eligibility for state health care coverage.[1]

The issue is whether it was an act of marital-status discrimination under the Wisconsin Fair Employment Act (WFEA)[2] for Dennis Kozich's employer, the University of Wisconsin-Oshkosh, to deny his application for family coverage under the state group health insurance program on grounds that his wife, Marjorie Kozich, already had family coverage

---

[1] The case caption names the Employe Trust Funds Board as the defendant in the action, and while the caption was never amended to substitute the real party-in-interest, the Group Insurance Board, the parties acknowledge for purposes of this appeal that the latter agency is the appropriate defendant. We accept that stipulation.

[2] Section 111.321, STATS., prohibits employers from engaging in any act of employment discrimination against any individual on the basis of, among other things, "marital status." Section 111.322(1) states that it is an act of employment discrimination to, among other things, "discriminate against any individual in . . . terms, conditions or privileges of employment . . . ."

through her employer, the Wisconsin Housing and Economic Development Authority.

We conclude that the board correctly ruled that the denial did not discriminate against the Kozichs on the basis of their marital status and we therefore reverse the trial court's order.

The material facts are not in dispute. Dennis has had a family health care plan under the state's health care insurance program since 1987, with Marjorie and their two children named as his dependents. In 1988, Marjorie also applied for and received a family coverage plan under the state program, naming Dennis and the two children as her dependents.

In 1991, the university informed Dennis that, under "state law" and the terms of the plans, he and Marjorie could not both carry family coverage and thus "[i]t will be necessary for either you or your wife to drop family coverage or change to two single plans."[3] Dennis and Marjorie appealed to the Group Insurance Board, claiming that the effect of the university's ultimatum was to discriminate against them by reason of their marriage in violation of WFEA.

Concluding that the contract provision limiting family coverage to one plan is authorized by §§ 40.52(1)(a) and 40.02(20), STATS.,[4] and does not vio-

---

[3] The university pointed out that because Dennis had dependent children, it assumed he and Marjorie did not wish to revert to two single-coverage plans.

[4] The statutes provide as follows:

**40.52 Health care benefits. (1)** The group insurance board shall establish by contract a standard health insurance plan in which all insured employe[e]s shall participate except as otherwise provided in this chapter. The standard plan shall provide:

(a) A family coverage option for persons desiring to provide for coverage of all eligible dependents and a single coverage option for other eligible persons.

late WFEA's anti-discrimination provisions, the board held that the Kozichs were "not entitled to two family coverages under the State health insurance [program]," and dismissed their appeal. The board based its decision on a provision in the insurance contract providing as follows:

> If both spouses are eligible for coverage, each may elect single coverage, but if one spouse ceases to be eligible for coverage, the spouse continuing to be eligible may change to family coverage without penalty. If one eligible spouse elects family coverage, the other eligible spouse may be covered as a DEPENDENT but may not elect any other coverage.

On *certiorari* review of the board's decision, the circuit court reversed, concluding that because "[o]nly married employees are forced to choose between health plans under the State contract," Kozich was discriminated against by reason of his marital status in violation of §§ 111.321 and 111.322(1), STATS.

In so deciding, the court placed principal reliance on *Braatz v. LIRC*, 174 Wis. 2d 286, 295, 496 N.W.2d 597, 600 (1993), where the supreme court held that a local school district's "health insurance nonduplication policy" violated WFEA in allowing married teachers whose spouses were eligible for family coverage at their places of employment to carry one policy or the other but not both.

██

In an appeal from a circuit court decision in an administrative review proceeding, we review the

40.02(20) "Dependent" means the spouse, minor child, including stepchildren of the current marriage dependent on the employe[e] for support and maintenance . . . .

agency's decision, not the court's. *Barnes v. DNR*, 178 Wis. 2d 290, 302, 506 N.W.2d 155, 160 (Ct. App. 1993), *aff'd,* 184 Wis. 2d 645, 516 N.W.2d 730 (1994). And because the parties dispute the scope of our review of the Group Insurance Board's decision, we first consider to what extent, if any, we should defer to the board's conclusions.

The case turns on the interpretation and application of various statutes—the anti-discrimination provisions of §§ 111.321 and 111.322, STATS., and their interrelationship with §§ 40.52(1)(a) and 40.02(20) and various provisions of the administrative code. We recognized in *Carrion Corp. v. DOR*, 179 Wis. 2d 254, 507 N.W.2d 356 (Ct. App. 1993), and again in *Mayville Sch. Dist. v. WERC*, 192 Wis. 2d 379, 531 N.W.2d 397 (Ct. App. 1995), that while we generally review an agency's interpretation and application of a statute de novo, we should defer to the agency, affirming the agency's determination if it is reasonable, in situations in which the legislature charges the agency with the administration and enforcement of the statute, its interpretation is of long standing or involves application of its special experience or expertise, or the legal question is "intertwined" with factual determinations or value or policy judgments. *Mayville*, 192 Wis. 2d at 389 n.7, 531 N.W.2d at 401 (citing *Carrion Corp.*, 179 Wis. 2d at 264-65, 507 N.W.2d at 359).

The rule is not absolute, however, for—as we also said in *Mayville*—no such deference will be accorded when: "(1) the agency's interpretation is contrary to the language of the statute or its legislative intent, or to the constitution or judicial authority; or (2) the case is one of first impression and there is no evidence that the

agency has any special expertise or experience on the subject matter of the statute being interpreted." *Id.* at 389 n.7, 531 N.W.2d at 401.

The Fair Employment Act is administered and enforced by the Department of Industry, Labor and Human Relations and, as it applies to state employees, by the Wisconsin Personnel Commission. *See Phillips v. Wisconsin Personnel Comm'n*, 167 Wis. 2d 205, 214, 482 N.W.2d 121, 125 (Ct. App. 1992). There is no evidence that the Group Insurance Board has any experience or expertise in the interpretation or application of the Act.[5] The board argues, however, that because it "followed" a decision of the personnel commission (affirmed by the circuit court) in a similar case, we should defer to its interpretation of WFEA in this case. We are not persuaded. The standards discussed in *Carrion* and *Mayville* are based on the agency's own "special experience or expertise" with respect to the statutes under consideration, and the board admittedly has none. Certainly the courts are as competent as the board to determine the applicability of precedential decisions (and even nonprecedential legal materials, such as decisions of other agencies and lower courts) to the undisputed facts of a case.

---

[5] The board points to *Gibson v. Transportation Comm'n*, 106 Wis. 2d 22, 26-27, 315 N.W.2d 346, 348 (1982), where the court applied a deferential "rational basis" test to a decision of the Transportation Commission under a different provision of WFEA. The *Gibson* court offered no explanation for its use of such a deferential test, however, and subsequent cases, such as *Carrion, Mayville*, and several others, plainly hold that such deference is to be accorded only in certain instances. *See, e.g., Lisney v. LIRC*, 171 Wis. 2d 499, 505, 493 N.W.2d 14, 16 (1992); *West Bend Educ. Ass'n v. WERC*, 121 Wis. 2d 1, 11-12, 357 N.W.2d 534, 539 (1984).

██

We conclude that we owe no deference to the board's decision.[6]

As to the merits of that decision, the Kozichs argue that *Braatz*, the case relied on by the circuit court in reversing the board's decision, should control the appeal as well. We disagree.

*Braatz* dealt with a "nonduplication" provision in a school district's health insurance policy stating that married teachers whose spouses are eligible for family coverage at their places of employment "shall have the option of carrying either the district's policy or the spouse's policy but not both." *Braatz*, 174 Wis. 2d at 289, 496 N.W.2d at 598.[7] LIRC argued that the policy did not discriminate on the basis of marital status

---

[6] The board also attempts to secure a deferential "reasonable-basis" review of its decision based on the nature of the action—suggesting that because, in *certiorari* cases, our review of the certified record, in addition to considering whether the agency exceeded its jurisdiction, or acted arbitrarily or contrary to law, also considers " 'whether the evidence was such that [the agency] might reasonably make the . . . determination in question,' " we must affirm the board's decision if it was reasonable. *See State ex rel. Brookside Poultry Farms v. Jefferson County Bd. of Adjustment*, 131 Wis. 2d 101, 120, 388 N.W.2d 593, 600 (1986) (quoted source omitted).

The only case cited in support of that argument, however, *Brookside Poultry Farms*, 131 Wis. 2d at 119-20, 388 N.W.2d at 600, did not involve review of an agency's interpretation of a statute; and *Carrion, Mayville* and a long line of supreme court cases discussing the scope of appellate review of legal determinations by administrative agencies satisfies us that our application of those authorities here is appropriate and requires a de novo review of the board's decision in this case.

[7] The district would, however, allow duplicate coverage if the spouse's policy "provided significantly less coverage" than

because application of the challenged provisions was triggered not by the teacher's marital status but by the "conduct" of the spouse in choosing to accept health insurance from his or her own employer. The court rejected the argument, stating that, in its view, "[i]t is only married employees with duplicate coverage who must make a choice between the district's policy or the policy provided by their spouse's employer," whereas "[s]ingle employees who have health insurance coverage from another source are not forced to choose between that coverage and the district's coverage." *Id.* at 292, 496 N.W.2d at 599.

As the board points out, however, the *Braatz* court, in so ruling, distinguished between the state nonduplication policy at issue here and the local practice challenged in *Braatz*. LIRC argued in *Braatz* that §§ 40.52(1)(a) and 40.02(20), STATS., and the two-spouse family-coverage bar based thereon—the policy provisions and the statutes that are the subject of the Kozichs' challenge in this case—created an "implied exception" to WFEA's marital-status discrimination prohibition for all such "nonduplication" provisions. The supreme court, assuming *arguendo* that the statutes and the state's nonduplication policy did in fact create such an implied exception, rejected LIRC's argument, concluding that the school district's practice "would not fall within th[e] exception" because

> [t]he state's policy is not the same as the [school district's] policy. The state's policy only applies where both spouses are employed by the state. [The school district's] policy applies no matter where the employee's spouse is employed.

the district's policy. *Braatz v. LIRC*, 174 Wis. 2d 286, 290, 496 N.W.2d 597, 598 (1993).

*Id.* at 294, 496 N.W.2d at 600.

If the supreme court has recognized a clear distinction between a state nonduplication policy applicable to two spouses employed by a single entity and a local policy applicable "no matter where the [other] spouse is employed," it is difficult to see how we can decide that the latter situation cannot be distinguished from the former, but that is what the Kozichs ask us to do here. We conclude that *Braatz* does not compel the result reached by the trial court.

The crux of the Kozichs' argument is that the state policy is discriminatory because it "requires . . . an employee whose spouse is also a State employee to choose to forfeit the rights to family health insurance coverage or to forfeit the right of each spouse to select [his or her] own health insurance coverage"; they maintain that this impermissibly discriminates on the basis of marital status. Again, we disagree.

The Kozichs' position is that §§ 40.52(1)(a) and 40.02(20), STATS., are ambiguous: that either (1) they are so unclear as to provide no support for the board's argument that they must be considered as continuing the state's long-standing nonduplication policy or, read another way, (2) they plainly demonstrate the correctness of the Kozichs' position—that all state employees, whether married to other state employees or not, are entitled to elect family health insurance coverage.

■

Where a statute is plain on its face, we look no further in construing it; but where a statute may be said to be ambiguous—when it is capable of being understood by reasonably well-informed persons in either of two senses, *Robinson v. Kunach*, 76 Wis. 2d 436, 444, 251 N.W.2d 449, 452 (1977)—we will construe it in light of its history, context, subject matter

and scope. *Kluth v. General Casualty Co.*, 178 Wis. 2d 808, 815, 505 N.W.2d 442, 445 (Ct. App. 1993). We believe §§ 40.52(1)(a) and 40.02(20), STATS., are ambiguous under that test and thus consider their legislative history.

The state health insurance program was established by Laws of 1959, ch. 211, § 15, and the board was authorized, as it continues to be today, to "provide a plan . . . of standard health insurance coverage" for state employees. It was also authorized to determine, by rule, "the possible coverage when there is or has been state employment by more than one member of a family." Section 66.919(7)(b) and (c), STATS. (1959). Pursuant to that grant of authority, the board promulgated WIS. ADM. CODE § GRP 20.10, which provided that "[i]f both spouses are eligible for coverage each may select individual coverage . . . . [But if] one spouse selects family coverage the other spouse may not select any coverage . . . ."[8]

In 1981, the legislature enacted §§ 40.52(1)(a) and 40.02(20), STATS., in the same form as they exist today. *See* Laws of 1981, chs. 96 and 381, § 24. During the same legislative session, WFEA was amended to prohibit, for the first time, discrimination based on marital status. *See* § 111.321, STATS. (created by Laws of 1981, ch. 334, § 10).[9]

---

[8] The language of the rule was amended (and renumbered) in 1978 to read: "If both spouses are eligible for coverage, each may elect single coverage. . . . If one eligible spouse elects family coverage, the other eligible spouse may be covered as a dependent but may not elect any other coverage." WIS. ADM. CODE § GRP 20.11.

[9] After the adoption of §§ 40.52(1)(a) and 40.02(20), STATS., and in light and under the authority of those statutes, WIS. ADM. CODE § GRP 20.10 was repealed in 1986.

On the basis of that history, the board argues that it is not reasonable to assume that the legislature, in amending WFEA to prohibit marital-status discrimination in 1981, intended to abrogate the long-standing policy of nonduplication of family coverage where both spouses are employed by the state—a policy which, as indicated, had been in effect for more than twenty years and which, arguably at least, had been sanctioned by the same legislature when, in the same session, it enacted §§ 40.52(1)(a) and 40.02(20), STATS. The board's argument is based largely on the rationale of a 1985 Dane County Circuit Court decision reaching the same conclusion. Because we consider the reasoning of that decision to be persuasive, we quote it here:

> When the Legislature amended the WFEA to prohibit marital status discrimination, it could not have intended to nullify the restricted options for heath insurance coverage which it created in secs. 40.52(1)(a) and 40.02(20), Wis. Stats. This is true for several reasons. First, the Legislature added the marital status discrimination provision to the WFEA in the same legislative session that it created secs. 40.52(1)(a) and 40.02(20) to restrict options for health care insurance coverage.
>
> Second, the creation of secs. 40.52(1)(a) and 40.02(20) gave statutory recognition to the long-standing administrative rule, sec. GRP 20.11, Wis. Adm. Code, which had mandated such restricted coverage since 1960. When the legislature enacts a statute it is presumed to act with full knowledge of existing laws.
>
> Third, there is no indication on the record that the Legislature debated or intended a repeal of secs. 40.52(1)(a) and 40.02(20) or sec. GRP 20.11. Repeals by implication are not favored in the law.

Fourth, it is a cardinal rule of statutory construction that when a general statute and a specific statute relate to the same subject matter, the specific statute controls. In this case, the specific restriction on health insurance options contained in secs. 40.52(1)(a) and 40.02(20), control over the general prohibition against marital status discrimination contained in the WFEA.

*Ray v. Personnel Comm'n,* No. 84-CV-6165, slip op. at 3-4 (Dane Co. Cir. Ct. May 15, 1985) (citations omitted). We adopt the circuit court's reasoning in *Ray* as equally applicable in this case.

It may be, as the State concedes, that §§ 40.52(1)(a) and 40.02(20), STATS., may not have precisely restated the language of the since-repealed WIS. ADM. CODE § 20.10, which expressly limited family coverage for married state employees. But it is difficult for us to hold, as the Kozichs urge us to do, that the legislature did not intend such a result in amending those statutes. If it did not, and instead intended to abandon the former practice, it would not have done so without mention or apparent consideration of more than $20,000,000 in annual premium costs the State would incur as a result of that change in position.[10]

---

[10] Neither the analysis by the Legislative Reference Bureau of the bill creating §§ 40.52(1)(a) and 40.02(20), STATS. (and making other changes in state group insurance provisions), nor the report of the Joint Survey Committee on Retirement Systems, which addressed the probable costs of the legislation, suggested that enactment of the statutes would alter the longstanding state practice of restricting group health insurance coverage, or would increase the cost to the state for such coverage. Nor did any fiscal estimate attached to the legislation suggest such a change.

Finally, the trial court held that the State breached its contracts with the Kozichs by unilaterally modifying their health care coverage from two family plans to one family plan.

Construction of a contract is an issue of law which we review de novo. *Gunka v. Consolidated Papers, Inc.*, 179 Wis. 2d 525, 531, 508 N.W.2d 426, 428 (Ct. App. 1993). "A contract is based on a mutual meeting of the minds as to terms, manifested by mutual assent." *Goossen v. Estate of Standaert*, 189 Wis. 2d 237, 246, 525 N.W.2d 314, 318 (Ct. App. 1994). Whether the parties have reached the agreement necessary to create a legal obligation depends upon the parties' expression of intention. *Id.*

The burden of establishing the existence of a contractual obligation is on the party attempting to establish its breach. *See Household Utils. v. Andrews Co.*, 71 Wis. 2d 17, 28, 236 N.W.2d 663, 669 (1976). The trial court, concluding that the State had offered the Kozichs double family coverage, that the Kozichs had accepted the offer, that consideration had passed between the parties, and that the State had performed the contract for two and one-half years, held that a valid contract for the provision of double family coverage to the Kozichs existed. The court did not, however, indicate or refer to any evidence upon which its conclusions were based. In particular, neither the court nor the Kozichs have referred to any evidence that the State intended to provide double family coverage.[11] The "contract" apparently arose through the couple's

---

[11] In fact, a review of the record suggests the opposite; in light of § 40.52, STATS., requiring a single family plan for married state employees and the plan descriptions in the It's Your

separate applications for family coverage and the State's acceptance of those applications. But nothing in those applications refers in any way to coverage. There was, in short, no meeting of the minds between the State and the Kozichs on the subject of double family coverage.

> A contract is based on a mutual meeting of the minds as to terms, manifested by mutual assent. For a term to be part of a contract, the term must have been in the contemplation of the parties; it must have been the parties' intent to contract for it; and the parties must have had a meeting of the minds as to the term.

*Goossen*, 189 Wis. 2d at 246, 525 N.W.2d at 318 (citations omitted). A contract will not be found based on terms unknown to, or outside the contemplation of, either party, *id.*, and we believe that is the situation presented on this record.

We conclude, therefore, that the evidence does not support the trial court's ruling that a contract for double family coverage existed between the State and the Kozichs. The most the evidence will admit is that the State agreed to provide health care coverage to the Kozich family, and that it has done. Dennis and Marjorie Kozich and their children remain insured under a state family health care plan and, under that plan, the employee in whose name the family plan insurance is issued and his or her spouse receive identical benefits and services, as do the children.

---

Choice booklet, the most reasonable conclusion is that the State did not intend to provide two full family plans to the Kozichs.

378

For the foregoing reasons, we conclude that the board's policy of barring both state-employee spouses from electing family health insurance coverage does not violate the provisions of the Fair Employment Act prohibiting discrimination on the basis of marital status. We further conclude that the State did not breach any contract with the Kozichs. We remand to the circuit court to enter an order affirming the March 2, 1994, decision of the Group Insurance Board.

*By the Court.*—Order reversed and cause remanded with directions.