STATE of Wisconsin—DEPARTMENT OF CORRECTIONS, Petitioner-Respondent,†

v.

David H. SCHWARZ, Administrator, Division of Hearings and Appeals, Respondents,

James DOWELL, Respondent-Appellant.

Court of Appeals

*No. 03–2001. Submitted on briefs April 1, 2004.—Decided June 2, 2004.*

2004 WI App 136

(Also reported in 685 N.W.2d 585.)

† Petition to review granted 9-1-04.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Michael K. Gould*, assistant state public defender.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Robert G. Pultz*, Wisconsin Department of Corrections.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

¶ 1. CURLEY, J. James Dowell appeals the trial court's order that overturned the decision of David Schwarz, the Administrator of the Division of Hearings and Appeals. Schwarz affirmed the Administrative Law Judge's (ALJ) decision not to revoke Dowell's parole. Schwarz, like the ALJ, concluded that the Department of Corrections (DOC) failed to provide proof that Dowell violated his most recent rules of parole when it attempted to revoke his parole based on DNA results that linked him to a crime that occurred during an earlier period of parole. Because WIS. STAT. § 304.072(3) (2001–02),[1] governing the DOC's jurisdiction in parole matters, is unambiguous and clearly limits the DOC's jurisdiction to seek revocation only for violations that occur during the current term of supervision, we reverse and reinstate the decision of the Administrator of the Division of Hearings and Appeals.

## I. BACKGROUND.

¶ 2. Dowell was convicted on March 30, 1994, of two counts of armed robbery and one count of operating a vehicle without the owner's consent. On May 9, 1994, he was sentenced to a total of ninety months in prison.

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

He was paroled in 1997, but his parole was subsequently revoked and he was sent back to prison on March 23, 1998. Upon reaching his mandatory release date of July 17, 2001, Dowell was again paroled.

¶ 3. In May 2002, while Dowell was out on parole, the DOC received notice that Dowell's DNA matched semen found on the clothing of a victim of a crime that occurred on May 23, 1997, while Dowell was out on the first of his two periods of parole. As a result, the DOC sought to revoke Dowell's parole, as there were two years, one month and fourteen days of his sentence remaining. A revocation hearing was held on June 18, 2002. The ALJ ruled that the DOC failed to allege any conduct that violated Dowell's July 2001 parole rules, and thus, denied the DOC's request to revoke Dowell's parole, concluding that the DOC "lost jurisdiction to pursue revocation for any undiscovered conduct occurring during that parole term" once that parole was revoked. The DOC appealed this ruling to Schwarz. Schwarz upheld the ALJ's decision, finding that WIS. STAT. § 304.072(3) essentially requires a revocation recommendation to be based on a violation that occurred during the current term of supervision. The DOC then petitioned for a writ of certiorari in the trial court. After ordering briefs, the trial court reversed Schwarz's decision and signed an order to that effect.

¶ 4. As a result of the DNA match, Dowell was convicted of kidnapping, armed robbery and two counts of first-degree sexual assault with a dangerous weapon. In February 2003, he was sentenced to a total of eighty years' imprisonment.

## II. ANALYSIS.

■■■■

¶ 5. A challenge to a parole revocation determination is reviewed by certiorari. *State ex rel. Macemon v. McReynolds*, 208 Wis. 2d 594, 596, 561 N.W.2d 779 (Ct. App. 1997). The reviewing court is limited to determining: "(1) [w]hether the [parole] board kept within its jurisdiction; (2) whether [the parole board] acted according to law; (3) whether its action was arbitrary, oppressive or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question." *State v. Goulette*, 65 Wis. 2d 207, 215, 222 N.W.2d 622 (1974). Moreover, "we review the agencys decision, not the [trial] courts." *Kozich v. Employe Trust Funds Bd.*, 203 Wis. 2d 363, 368–69, 553 N.W.2d 830 (Ct. App. 1996).

■■■■

¶ 6. "Statutory interpretation is a question of law that we review *de novo,* and as such, we are not bound by an agency's interpretation." *Hutson v. State of Wisconsin Pers. Comm'n*, 2003 WI 97, ¶ 31, 263 Wis. 2d 612, 665 N.W.2d 212. However, some degree of deference is generally given to an agency's statutory interpretation, and "[t]he degree of deference . . . depends upon the extent to which the 'administrative agency's experience, technical competence, and specialized knowledge aid the agency in its interpretation and application of the statute.' " *Id.* (citation omitted). The supreme court has identified three distinct levels of deference: great weight deference, due weight, and *de novo* review. *UFE Inc. v. LIRC*, 201 Wis. 2d 274, 284, 548 N.W.2d 57 (1996). The *de novo* standard of review is "applicable when the issue before the agency is clearly

one of first impression, or when an agency's position on an issue has been so inconsistent so as to provide no real guidance." *Id.* at 285 (citation omitted).

¶ 7. Here, although Schwarz indicated that the ALJ's interpretation is "consistent with the department's past practice," and that "the department has never sought to revoke any person's parole supervision based on conduct occurring during a previous term of parole supervision[,]" it appears that parole revocation has been sanctioned on at least one occasion in the past for conduct occurring during a previous term. As the agency's position on the issue may not be entirely consistent, we will employ the *de novo* standard of review.[2]

¶ 8. As the supreme court recently reaffirmed, "[w]hen interpreting a statute, our goal is to discern the intent of the legislature, which we derive primarily by

---

[2] Neither brief addresses the proper level of deference to be given to the agency's interpretation of the statute. Relevant to that determination is the history of the agency's interpretation and application of the statute in the past. We have not been provided with enough information to discern just how often the agency has affirmed parole revocations based upon conduct occurring during a previous term of parole. Schwarz indicated that the DOC has never sought to revoke parole based on such conduct, but the DOC has referenced at least one occasion in which the Administrator affirmed a revocation regardless of the fact that the conduct occurred during a prior parole period. As such, we are employing the *de novo* standard of review. However, the outcome would be the same irrespective of which level of deference is employed, as we ultimately agree with the agency's interpretation that the department lacks jurisdiction to pursue revocation based upon conduct that occurred during a previous term of parole.

looking at the plain meaning of the statute." *Wisconsin Citizens Concerned for Cranes and Doves v. DNR*, 2004 WI 40, ¶ 6, 270 Wis. 2d 318, 677 N.W.2d 612. "[I]f the statute is unambiguous, we do not consult extrinsic sources such as legislative history to ascertain its meaning; we simply apply its plain meaning." *Id.* Furthermore, a statute is not rendered ambiguous "because the parties disagree as to its meaning[.]" *Id.*, ¶ 7. A statute is only ambiguous if it "is readily susceptible to two or more meanings by reasonably well-informed individuals." *Id.* Accordingly, unambiguous statutes are applied according to their plain meaning, and that plain meaning "takes precedence over all extrinsic sources and rules of construction, including agency interpretations." *UFE Inc.*, 201 Wis. 2d at 282 n.2.

¶ 9. Thus, when addressing claims of ambiguity, we first look to the wording of the statute itself. WISCONSIN STAT. § 304.072(3) directs:

> **(3)** Except as provided in s. 973.09 (3) (b), the department preserves jurisdiction over a probationer, parolee or person on extended supervision if it commences an investigation, issues a violation report or issues an apprehension request concerning an alleged violation prior to the expiration of the probationer's, parolee's or person's *term of supervision.*

(Emphasis added.) Initially, § 304.072(3) references the exception created by WIS. STAT. § 973.09(3)(b), which permits a court to extend a period of probation beyond the initial term in certain circumstances.[3] Section 304.072(3) then discusses when the DOC retains juris-

---

[3] WISCONSIN STAT. § 973.09(3)(b) reads:

> (b) The department shall notify the sentencing court, any person to whom unpaid restitution is owed and the district

diction. It states that the DOC preserves jurisdiction over a person if the DOC "commenc[es] an investigation, issues a violation report or issues an apprehension request concerning an alleged violation prior to the expiration of the . . . parolee's . . . term of supervision." The clear implication of the statute's wording is that the DOC loses jurisdiction to commence an investigation, issue a violation report, or issue an apprehension request concerning an alleged violation if it has not done so before the term of supervision has ended. Stated differently, the DOC cannot commence preliminary parole revocation proceedings after the term of supervision has ended if it has not preserved its jurisdiction in one of the three listed manners.

¶ 10. The ALJ, in refusing to order a revocation of Dowell's parole, determined that WIS. STAT. § 304.072(3) was unambiguous. The ALJ explained:

> I find the Department lost jurisdiction to pursue revocation of Mr. Dowell's parole for conduct occurring during his last parole term when that term of parole ended upon revocation of that parole . . . . I find that

attorney of the status of the ordered restitution payments unpaid at least 90 days before the probation expiration date. If payment as ordered has not been made, the court shall hold a probation review hearing prior to the expiration date, unless the hearing is voluntarily waived by the probationer with the knowledge that waiver may result in an extension of the probation period or in a revocation of probation. If the court does not extend probation, it shall issue a judgment for the unpaid restitution and direct the clerk of circuit court to file and enter the judgment in the judgment and lien docket, without fee, unless it finds that the victim has already recovered a judgment against the probationer for the damages covered by the restitution order. If the court issues a judgment for the unpaid restitution, the court shall send to the person at his or her last-known address written notification that a civil judgment has been issued for the unpaid restitution. The judgment has the same force and effect as judgments entered under s. 806.10.

once the prior Revocation Order and Warrant was issued his last parole term expired and the Department lost jurisdiction to pursue revocation for any undiscovered conduct occurring during that parole term.

Schwarz agreed, stating: "It is reasonable to conclude that the legislature intended that section [§ 304.072(3)] to mean that the action must be taken during the current term of supervision, not during a subsequent term of supervision." Upon our *de novo* review, we agree.

¶ 11. After reviewing Wis. Stat. § 304.072(3), we are satisfied that the statute is not ambiguous and clearly limits the period of time during which the DOC has jurisdiction to revoke a person's parole. The only reasonable interpretation of the statute is that the DOC's jurisdiction to initiate parole revocation proceedings is limited to the current "term of supervision." Had the legislature meant to permit parole revocations proceedings for prior parole violations, as advanced by the DOC, the statute would have been written to read "prior to the expiration of the person's sentence" or "prior to the date of the person's final discharge from parole, probation or extended supervision." The DOC contends that a review of the legislative history supports its view. Inasmuch as we are satisfied that the statute is not ambiguous, we need not resort to extrinsic aids to ascertain the meaning of § 304.072(3).

¶ 12. Next, the DOC asserts, and the trial court agreed, that even if Wis. Stat. § 304.072(3) is not ambiguous, it must be harmonized with Wis. Stat. §§ 302.11(6) and 304.06(3). According to the DOC, by harmonizing § 304.072(3) with the two other statutes, § 304.072(3) is severely limited in its application. We disagree. Harmonizing the statutes yields the same result.

235

¶ 13. WISCONSIN STAT. §§ 302.11(6) and 304.06(3) state only general rules that apply to all parolees. The relevant part of § 302.11(6) reads: "Any inmate released on parole under sub. (1) or (1g) (b) or s. 304.02 or 304.06 (1) is subject to all conditions and rules of parole until the expiration of the sentence or until he or she is discharged by the department." Section 304.06(3) states, in relevant part:

> Every paroled prisoner remains in the legal custody of the department unless otherwise provided by the department. If the department alleges that any condition or rule of parole has been violated by the prisoner, the department may take physical custody of the prisoner for the investigation of the alleged violation. If the department is satisfied that any condition or rule of parole has been violated it shall afford the prisoner such administrative hearings as are required by law.

¶ 14. We are not persuaded that a different outcome would result by harmonizing WIS. STAT. § 304.072(3) with these statutes. WISCONSIN STAT. § 302.11(6) addresses the general rule that inmates released on parole are not totally free and are required to abide by the DOC's rules. Further, WIS. STAT. § 304.06(3) cautions that parolees can be taken into custody for rule violations. Neither of these statutes address the issue presented here—whether a subsequent period of parole can be revoked for violations of rules placed upon the parolee for an earlier period of parole. That question is answered by § 304.072(3), and the answer is that parole may not be revoked for earlier violations.

¶ 15. Moreover, "[w]here two statutes relate to the same subject matter, the specific statute controls the general statute." *State v. Larson*, 2003 WI App 235,

¶ 6, 268 Wis. 2d 162, 672 N.W.2d 322. Here, Wis. Stat. § 304.072(3) specifies when the DOC preserves jurisdiction. Wisconsin Stat. §§ 304.06(1) and 302.11(6) are more general, explaining the limitations on a parolee's freedom.

¶ 16. As a result, when Dowell's first term of supervision ended, the DOC lost jurisdiction to initiate parole revocation proceedings based upon any conduct in violation of the rules of that period of parole. Had the statute been worded to read that the DOC retained jurisdiction until the "expiration of the sentence" or until the "date of the person's final discharge from parole, probation, or extended supervision," it would yield the result desired by the DOC. However, the legislature chose to use the phrase "term of supervision." The DOC argues that a sentence is not divided into "terms." That argument is better left addressed to the legislature. Moreover, there are legitimate reasons for limiting the basis for revocation to violations during the current term of supervision. Not only would stale violations be difficult to prove or defend against, but a truly rehabilitated person who earned the right to be paroled might be confronted with long-ago violations never pursued during the earlier "term of supervision."

¶ 17. Finally, we hold the DOC's argument that this interpretation would result in ambiguities and that "the DOC could never grant a voluntary return under the DHA decision because parolees could engage in the mischief of requesting a return following serious violations, albeit unknown to the parole agent, hoping to exit with a clean slate on a new parole term," to be preposterous. Any criminal act committed during an earlier parole is subject to a new criminal charge.

Dowell can attest to this fact—his earlier parole violation resulted in an eighty-year sentence.

*By the Court.*—Order reversed.

¶ 18. SCHUDSON, J. (*dissenting*). While the issue in this appeal is one on which reasonable minds may differ, I believe the circuit court's conclusion is correct.

¶ 19. What is the meaning of "term of supervision" under Wis. Stat. § 304.072(3)? I'm not sure. But I am convinced that the majority's explanation of its "unambiguous" rationale is tautological. Here, where even State officials are at odds over the interpretation of these seemingly simple words, one thing seems quite clear: "term of supervision" is ambiguous.

¶ 20. Moving, then, to the proper methodology for analysis of an ambiguous statute, I find the Department of Corrections' arguments persuasive. The Department thoroughly examines the interplay of several statutes, the apparent legislative intent, and the supportive case law. The Department's argument that "the term 'expiration of sentence' is not used in Wis. Stat. § 304.072(3), because that statute also relates to probation supervision, which is not a sentence," all but defeats the majority's rationale. Perhaps most significantly, Wis. Stat. § 302.11(6)[1] and (7)(d)[2] strongly support the Department's view.

---

[1] Wisconsin Stat. § 302.11(6) (1999–2000), provides in pertinent part:

> Any inmate released on parole under sub. (1) or (1g) (b) or s. 304.02 or 304.06 (1) is subject to all conditions and rules of parole *until the expiration of the sentence or until he or she is discharged by the department.*

(Emphasis added.)

[2] Wisconsin Stat. § 302.11(7)(d) (1999–2000), provides:

¶ 21. Therefore, harmonizing the statutes, and being mindful of the purposes of parole supervision, I am satisfied that "term of supervision" under WIS. STAT. § 304.072(3) is not limited as the majority concludes. Instead, like the circuit court, I conclude that "term of supervision" covers an individual's entire sentence, regardless of revocation stops along the way. Accordingly, I respectfully dissent.

A parolee who is subsequently released either after service of the period of time determined by the department of corrections in the case of a waiver or the division of hearings and appeals in the department of administration in the case of a hearing under par. (a) or by a grant of parole under par. (c) is subject to all conditions and rules of parole *until expiration of sentence or discharge by the department.*

(Emphasis added.)